## SCHMIDT *v.* HORTON Et Al.

No. 2865 (See 52 Nev. 302)

### ON PETITION FOR REHEARING

September 5, 1930.

DUCKER, C. J.:

Counsel for appellants is to be commended for the industrious and earnest efforts he has made in the petition for a rehearing to enforce the points relied on by him for a reversal of this case. He has with much ability practically reargued every point discussed by him in his briefs and oral argument on the hearing in this court, and has elaborated the same with additional authorities. We have considered the question of a rehearing with the care which the importance of the case deserves, but find nothing warranting a formal reconsideration. There is substantial evidence tending to establish the facts found by the trial court. If we were so inclined we have no jurisdiction to substitute for these facts those claimed by appellants to be the legitimate product of the evidence.

The facts found disclose a joint adventure, as this modern legal entity has been recognized by this court and the courts and authorities of other jurisdictions. Counsel for appellant dispute this and stoutly assert that the most the evidence reveals in the way of a contract is an unexecuted partnership agreement. We are satisfiied with our opinion in this regard and see no useful purpose to be gained by again discussing it. Suffice to say that when several persons enter into an agreement, as was done in this case, to search for and locate mining property, furnish themselves with the means to do so and actually search for and locate such property, we can see nothing else essential to launch the enterprise. The object of the venture is fully consummated. If Schmidt's testimony is true he was a party to such an agreement, furnished material and labor to promote its objects, was ready and willing to go in company with Traynor and Horton on the successful venture on the morning of March 1, and was

only prevented from actual participation in the rich discovery by their objection to his going with them. How can it be said, then, that he was only a party to an unexecuted agreement? We think the contention is not supported by reason.

It is again asserted that Horton withdrew from the partnership agreement prior to the discovery. The undisputed evidence is of sufficient force to show as a matter of law that his withdrawal was ineffectual. It was but an angry gesture unaccompanied by any reimbursement to Schmidt as to his labor and material in advancing the partnership objects, which was necessary to make his declared withdrawal effective. He was amenable to this equitable restriction.

Furthermore, Horton revoked his declaration and intention of withdrawal when, in company with Traynor, he used the partnership equipment on March 1. The undisputed evidence shows the use of such equipment on the trip which proved so fortunate to the adventurers. Besides, there is the finding of the court supported by Schmidt's testimony to the effect that on the morning of March 1 it was agreed between the three that the former was included in the venture. Consequently, the judgment would be supported by this finding and evidence, even though Horton had formerly effectually withdrawn from the agreement.

Nothing has been advanced by petitioner which causes us to doubt the correctness of our ruling that the defense of infancy is not available in this case. As stated in Pinnell v. St. Louis S. F. R. Co. (Mo. Sup.), 263 S. W. 182; 41 A. L. R. 1092:

"It is a distinctive principle in the law of contracts, supported by reason and numerous precedents, that an infant's contracts when beneficial to him will be held to be binding."

There is no reason discernible for taking this case out of that category. The rule does justice to both parties. The contract in this case was beneficial to all concerned. There is present no element of disparity between an adult and a minor. They were all on an

equal footing in this respect. There is no hint in the evidence of unfairness or fraud practiced on Horton and he was not overreached in any way. A just regard for the equitable rights of his coadventurers therefore estops him from repudiating his contract with Schmidt. To suffer him to do so would be permitting him to convert the privilege of infancy into an instrument of injustice.

COLEMAN, J.: I concur.

SANDERS, J.: I dissent.